I call the case it's the United States versus Demuro. Good morning, Judge Padova, Judge Sloboda, Judge Vodansky. May it please the court I would like to first ask for two minutes of rebuttal time with the court's permission. Okay now I see that there are two appellants you can only have one rebuttal. Correct, thank you. You know I mean okay. We've discussed that. My name is John Brown and I present appellant James DeMuro. And who represents the other person? Mr. Noonan. Yeah but I mean who is the other person? Teresa DeMuro, James DeMuro's wife. They don't have the same issues? They are there are a couple that are unique to Mrs. DeMuro, Teresa DeMuro. Okay, all right, thank you. But when I when I speak I speak I think for both. In a sense the same issues affect Mr. DeMuro affect Mrs. DeMuro. Okay, you're taking the common issues. Correct. Sure, that's fine. We are asking this court to set aside this verdict and remand the matter for a new trial. This request is based on a series of evidentiary rulings of both inclusion and exclusion that allowed the government to present such a one-sided version of events. The testimony effectively eviscerated the appellants good-faith claim that they were not violating the law by paying over the payroll taxes on a piecemeal, albeit slow, basis. You're not limiting yourself? No, that's right. To the sentencing? I'm not. I was not instructed to do so. No, we wouldn't instruct you, but I would have thought that was the issue that would be of interest, but go ahead. It absolutely is, Your Honor, and I plan on addressing it shortly. All right, yeah. Eight minutes is a short period of time. It is, very. Especially when you take two off of it. Correct. Okay, very Assume at the end of the testimony was that the DeMiros spent all their money on their luxury spending, number one. Number two, they ignored the IRS after a period of time and completely stopped negotiations. Number three, they made no attempt or minimal attempts to refinance. Number four, that they stole from their employees, and number five, that they filed knowingly false tax appeals. Is there any question about any of those things? I submit there is, yes. They spent a lot of money on luxury items, didn't they? They did, but not solely. I mean, you know. Not solely, but instead of taxes, they spent it on luxury things. They had 20 employees that they paid for 20 years that lived on this firm. And some of those employees, one of those employees, had child support withheld and not paid over to the state? It was. Eventually? Yes, not very long. When he found out about it, he paid it over. After the employee was called on the carpet for not having kept up with the child support. That is correct. And I would like to now quickly address the abuse of trust. The government concedes that the thing that makes this an abuse of trust position is the trust in fund that was required to be set up by the IRS. That was not voluntary. The IRS threatened them, essentially. Well, of course. I mean, if they didn't pay their you know, didn't pay the employee taxes, so the IRS says, hey, you better start paying your taxes. Exactly. But that does not create a trust relationship. The trust relationship, the hallmark of it, is discretion. As Your Honor pointed out in U.S. v. Lieberman, discretion is looked at by to what extent is the activities scrutinized. The whole purpose of the trust and fund is to scrutinize their activities. So there's no way that this trust can facilitate the crime or conceal the crime. It surprised me that you didn't cite Pardo, this court's decision in United States v. Pardo, P-A-R-D-O, where we said whether a defendant occupies a position of trust is determined by three factors. You never did, Your Honor. I did not. 1994. It's not exactly a new case. Perhaps my colleague did, but I did not. I didn't see it in any of the briefs. Go ahead. I know about it. I wrote it. Go ahead. I believe my time is up. Oh, go ahead. Keep on going. Okay. Well, the purpose of the statute, as correctly pointed out by the government, is that the special fund and trust is to facilitate enforcement of the payroll taxes. How is that done with this requirement? They set up a separate bank account because they can scrutinize their activities. Therefore, they have no discretion. You say they can scrutinize their activities. Was the bank providing statements to the IRS on this trust account, or how are they being scrutinized? The bank, I believe, had authority to review the accounts at any time. The IRS had the authority to process. They're setting up, when they set up the, it's set up pursuant to the statute and gives the IRS the authority to. Was the IRS notified by the bank, whatever financial institution the account was held at, when the account was closed? I believe so. That's how they found out. Absolutely. So in order to apply this enhancement, you have to, it has to, the trust relationship has to either facilitate the crime or conceal the crime. And the whole purpose by statute is to do the opposite, but for the action to come under increased scrutiny. Did you raise those, that issue in the district court? Yes, it was. It was argued extensively. I know your red light's on, but you better take a little more time so that we can get the gist of your argument. Sure. Well, that is my argument. If you look at, there's two ways that a trust relationship can be set up and abused. Is it, is it done to conceal a crime or is it done to facilitate the crime? So there, this relationship in no way benefited them in that way. It was designed for the government to be able to, again, scrutinize and make, enforce the demuros, if you will, to put the money in there and to use, and to pay over the payroll taxes. So it's kind of like the opposite of a trust relationship. It's a mistrust relationship. We don't trust you. Therefore, we're making you set up this bank account. So therefore, the enhancement does not apply. And in particular, it's not, in this case, harmless error because there's no way for this court to know whether that would affect the judge. Oh yes, there is. The judge made it very clear as to how he felt about these defendants. Is there any question? Didn't he say those things specifically? He said some harsh words. He gave a very strong signal. He said, this is one of the most persistent patterns of obstruction and defiance and disregard of law that I have seen. And then he said, there's very strong argument could be made that this is outside the heartland of offenses and I should not consider the guidelines, but rather I should go above them. You think that doesn't show what the judge thought? Well, it does, but at the same time the judge departed two levels. I don't understand that, but that's beside the point. But, I mean, how can there be any question as to how the judge felt about these defendants? I mean, he said it on the record. He did, but he also said good things about the defendants. What did he say that was good? That they had no criminal history, that they had... Is that good? I mean, the fact that you have an absence of criminal history is not a real plus. Go ahead, what else? That they were pillars of the community, that many letters had been written on their behalf. Well, that's... Go ahead. I mean, that's... Those are the good things? Sure, absolutely. Okay, well, go ahead. Do you have any questions? No, I do not. Do you have any questions? Okay, thank you. Thank you, Judge. We'll hear your colleagues. Mr. Noonan. May it please the Court, my name is Michael Noonan and I represent the obituary, Theresa DeMuro. Okay, please, you're being taped, so we want you to speak up. Yes, Your Honor. Okay. A fundamental notion in due process of law is that the criminal defendant is able to present a defense and fully present a defense. Let me put this in context as quickly as I can. It's my understanding here that the government's theory of the case against your client was that she and her husband didn't pay their taxes because they wanted to live a lavish lifestyle. That's correct. During which they also avoided paying child support. And also, it's my understanding that your principal defense here was good faith and lack of intent to break the law. I believe that Ms. DeMuro attempted to put forth as her principal defense the fact that she was not the one who was responsible for the tax liabilities, that it actually fell on her husband and therefore is more akin to an innocent spouse defense. And I believe that the deprivation of her right to call Agent Walling, who was an individual who investigated the company DA Resources, was a deprivation of her right to present that defense in that regard. And I believe that would have been her best defense and I obviously cannot speculate as to whether the defense would have been successful or not, but I do believe that it was a viable defense. This individual did investigate DA Resources. He took a statement from Mr. DeMuro's co-defendant, which... Her husband, who said that Teresa is not responsible. Exactly. And this was excluded, first on the grounds of relevance, and secondly on the grounds of a hearsay statement. To first address the relevance, I would respectfully submit that it's extremely relevant. I mean, DA Resources was actually part of the indictment in this matter, and she was charged and ultimately convicted of using this company to thwart the tax liabilities of DA Resources. And an investigation actually from the government, which showed that... at least uncovered some evidence that she was not the one responsible for paying those tax liabilities, I believe was very relevant. But it is hearsay. The specific statement from Mr. DeMuro is hearsay. I would submit that it falls under the hearsay exception as a statement against interest. And it was excluded in the district court as the court found that it did not have... it was a statement against interest, however, it didn't have the additional indicia of reliability to have the statement admitted. I would submit that that was an error. It did have the extra indicia of reliability. It was signed, it was attested to, it was written out, and additionally it was witnessed by a government agent, who surely could have taken the stand and given testimony as to the... at least, voluntariness of the statement, the circumstances surrounding the statement, how it was given. Was Ms. DeMuro part of management of this company? In some... there's evidence that she was in some ways. In what kind of evidence? Well, there was evidence that she was able to hire and fire people and make decisions. That's a pretty important part. That is, but I'm not sure if that... What about remuneration? Did she... was she... was this a stock company or was it... I believe she did have shares in the company as well. So she was an owner? She was an owner. And she was a manager? Yes. She had signatory authority on bank accounts? She did. She exercised control, and I do believe that she exercised some control. However... So why shouldn't she be liable? I mean, if somebody gets into a position like that and doesn't pay taxes and doesn't know that you're supposed to pay taxes, I think my 11-year-old granddaughter would know that. Because I think the essential issue is the intent here, and whether... Her intent wasn't to live a lavish lifestyle? I believe her intent was to live a lavish lifestyle. I'm not sure... And is that a good... is that a good intent? No, it's not a good intent. However, I do believe that there was maybe some evidence through this agent to show that her intent at least was not that... or at least her understanding was that she did not have the... It wasn't her responsibility for the tax liability. Then she's not very bright if she's in that position. I mean, if she... if you're... if you're managing a company like that, a co-manager, and you don't know that you have a responsibility to pay the taxes? There was some evidence that she wasn't there full-time. Well, did she sign any of the checks on the trust account that... where the money was used to pay for personal expenses? I believe she did. Isn't it true that she was the only authorized signatory on one of the trust accounts or the successor trust account? I believe she was, but as far as the responsibility... and I understand that there's obviously strong evidence contrary to my position, but I would submit that that should have been a jury determination. That at least she should have been able to present evidence in this regard to show that she was not the one who was responsible. Or at least she had some type of basis to believe that she was not the one responsible. Well, the only evidence you're talking about, though, is the statement that her husband gave that said, my wife's not responsible. I would also submit that the agent could have testified as to other findings in his investigation. Maybe not specific to the statement, but his conclusions, what other evidence he was able to uncover. Well, now you're speculating, though. Can you give... was there an offer of proof made as to what the agent would say beyond authenticating the statement? There was not. However, I would submit that, based on the colloquy between counsel and the court, it was very clear that this witness was going to be excluded as irrelevant. And that the issue was preserved in that sense, and it was blanketly excluded as irrelevant. But can you tell us, as you stand here today, what he would have said beyond authenticating the statement? I cannot, definitively. Okay. I could obviously speculate he would have had some additional evidence in taking the statement and being a government agent investigating this company. But as far as making a definitive statement, I could not. Are these people in jail now? Yes, they are. They're both in jail. Yes, they are. And just to that point, Your Honor, I would also submit that it potentially was plain error to not allow Mr. Muro at least to present some testimony in this regard. And I think it potentially could have had a substantial outcome. For an attorney to stand before the jury and argue she wasn't responsible is one thing. But for an attorney to actually argue that the government's own agent uncovered at least some evidence that she was not the one responsible for the tax liabilities— You're saying, as a matter of fact, she's not responsible? I'm not saying that. I'm saying— I'm sorry. I didn't understand what you just said. Your Honor, I apologize. I'm basically saying that there was some evidence to at least support the position that she was not the one responsible for the tax liabilities. Well, what evidence could there be that she was an owner, she was a manager? How could she not also be responsible? Because she relied on her husband to be the individual who was responsible for the tax liabilities. But that doesn't mean that as a matter of law she's not responsible. I understand that. I would submit that that's a fact determination for the jury and that it was a deprivation of her right to present that fact to the jury. But when this trust account was established, she became a signatory, and she knew that the purpose of the trust account was to pay taxes. And she didn't send checks to the IRS. She sent them elsewhere. Yes. I'm not sure, aside from her being a signatory, how much knowledge or control she actually had. Well, what more could she have had than to have the right to sign the checks? I could not speculate, Your Honor. She may have had the right to sign the checks out of convenience, rather than actually understanding the tax liabilities. You don't have to have a tax course to know that you have to pay taxes on your employees. That's correct. But I believe it still should have been a, and would submit that it still should have been a jury determination, and she still shouldn't be able to present some facts. What would the argument have been to the jury? She's so stupid that she doesn't know that you have to pay taxes? And that she would not? Is that a reasonable argument a judge should let somebody make? I believe that goes to intent. And if her stupidity or her willingness to live a lavish lifestyle and just turn her head to the tax liabilities negated her intent to thwart the, her potential tax liabilities, and I do believe that's a defense that she should have at least had the opportunity to present, whether it would have been successful or not. The record is clear that she knew she was writing checks on a trust account, which was established by virtue of IRS imposition. Yes. Isn't the evidence overwhelming with respect to her guilt? The evidence was strong, but... So that even if there were some technical error with respect to the admission of the evidence that you say that was erroneously excluded, wouldn't that error be harmless? I don't believe so, because I believe that there's no possible way to sit here and speculate how a jury would have taken the evidence from DA resources and her liabilities. And is the argument very strong one way or the other? I could not speculate, but I believe there was an argument to be made at least, and that she was precluded from making that argument. How a jury would actually make that factual determination is something I could not possibly articulate to the court. Do you have anything else to say? I don't, Your Honor. Thank you. Do you have anything else? Thank you. We'll hear from the government. Good morning, Your Honors. Joseph Severson for the United States. Mr. Severson, there's a wealth of jurisprudence in the Third Circuit with respect to this and the center penance so far as I'm concerned with respect to that jurisprudence is United States versus Pardo. And I was wondering whether or not why that wasn't cited in the brief. It clearly sets forth three factors which must be considered with respect to this enhancement. And the opinions after Pardo all cite Pardo. The opinions before Pardo played important parts in the development of that three-part test. But that three-part test is Pardo, clearly. And you don't deal with those three factors in your brief. I wonder whether or not you can deal with those three factors now. You know the three factors I'm talking about? Factor number one is whether the position of trust allows the defendant to commit a difficult to detect wrong. Now this trust account was put into being, was it not, for transparency reasons. So that the government would only have one account to look at so that it would make it easier for the government to detect wrong. Not more difficult. Your Honor, I don't think that's supported by the record in this case. In this case, there's no evidence that the IRS was receiving any notifications as to what was going on with the funds. Let's take a look. Why is the account, I'm sorry, I'm sorry Judge, go ahead. Prior to the trust account, monies were commingled in the operating accounts. Government wanted to be able to follow contributions for tax purposes, withholdings and contributions. They wanted that to be put in one account so that that account would give transparency to the conduct of the defendant's year. Now how does that make it more difficult, that trust account? How does that make it more difficult to detect wrong? Makes it easier to detect wrong, does it not? Again, you know, the evidence here was that they, that the government wasn't receiving notification. Could it have been receiving notification? Could it have? I mean, did it ask for it? That's, that's not reflected in the record here, Your Honor. The government learned that the account had been closed. That's correct, Your Honor. From whom? The record does not reflect how the government learned that the government, That's a big red flag, right? You had to set up this trust account, now you closed it? You know, the government did learn of that eventually, obviously, and that's reflected in the record. But how the government did, You mean so many people don't pay their taxes, that it's just one of the things the government sets aside? Well, no, Your Honor. Really? That was a serious question. Do you have any idea how many such trust accounts are set up? I do not, Your Honor. Okay. Again, so, you know, and I think it's also important to understand sort of what the, what the purpose was, you know, behind the enactment of this special, special sort of segregated fund trust provisions. Which was, which was to, to make it easier to, for, for the government to enforce violations of trust fund tax obligations. The legislative history, which we discussed in our brief, shows that the, the concern that motivated the enactment of those provisions was to, and by those provisions, I mean both, both 7512, which provides the provisions for setting up the account, and 7215, the companion criminal enforcement provision. The purpose of that, as evidenced by the legislative history, was to give the government another avenue of enforcement. So under 7215, it's, it's a misdemeanor to misappropriate funds from special fund. Do you regard the establishment of that trust fund as a complement to the integrity of the defendants in this case? Uh, no, your honor. Well, let's take a look at point number three in Pardo, which reads, whether there has been a reliance on the integrity of the person occupying the position of trust. Well, I, I think, you know, notwithstanding that, you know, it obviously doesn't, it doesn't necessarily, uh, connote that. But, but I, I think it is important, your honor, to, uh, the context of this. So this was, this was set up, uh, you know, after the IRS had had some dealings, uh, with, uh, with the, with the defendants. They were initially advised, uh, once the revenue officer was assigned to their case, that the government had a range of enforcement options to bring them into compliance. One of those was setting up this special trust fund. Another one was seeking to have their business shut down. After a period of time lapsed, uh, the government and the demurers still hadn't come into compliance with their trust fund tax obligations. Uh, the government, the government then chose to impose a special, uh, special trust fund rather than, rather than seeking to shut their business down. So I, I think in the, in the context of the facts of this case, uh, you can say that that element is satisfied, uh, because they, they did give them. In any case where the government requires a section 7512 trust account that there would be an abuse of trust position, abuse of trust enhancement appropriate? I don't know that I would take that position, Your Honor. I, I think. What makes this case any different from any other case? Well, I, I think the fact that they weren't, that they weren't closely scrutinized, uh, that, that here, uh, given these unique facts. So the government did not exercise diligence and therefore they abused their trust. I don't know that it follows. Well, uh, again, uh, you know, you know, it, it enabled them to, it enabled them to continue to operate their business. It didn't get shut down. On the assumption that the government would still ignore it. I mean, it, it, how else did it enable them unless they assumed that the government would not be carefully scrutinizing this account? And other accounts like it. We don't know how many there are out there. Let me read to you right from the, from the commentary, uh, with respect to this enhancement. Well, let me take the language of that commentary in pertinent part. How did the establishment of this trust facilitate the concealment of the offense that followed? Uh, well, the requirement is that it facilitate the concealment or the commission of the offense. It doesn't have... Did it, did it conceal the, did it facilitate the concealment? Uh, it, I think it facilitated the commission. Okay. So no to concealment, yes to commission. But that's... Facilitate the commission of the offense. Compared to what it was before, which was the money was in general operating accounts. Okay. Well, again, uh, I, I think it's the, it's the factual context of this case. It allowed them to, it allowed them to continue to operate their business. Uh, the IRS didn't seek to, to shut them, to shut their business down. Uh, therefore, uh, they were able to continue, uh, withholding trust fund taxes from their employees. That's a pretty broad form for the word facilitate, isn't it? Well, it facilitated the crime. I mean, they, rather than paying over the, the trust fund accounts... The fact that they signed checks facilitated the crime. Which they were doing before the account, the account was established. Right. Well, that's true. And I, you know, I, I want to address another point. I mean, it, uh, counsels, uh, for their offense said that, uh, you know, the government concedes, uh, that it is only the special funded trust, uh, that creates, uh, that creates a trust, uh, that creates, that makes it appropriate for application of the enhancement of trust. I, you know, we don't, we didn't concede that point in our brief. That's not correct. Um, you know, for the reasons we stated, we think you, you know, we think you can, uh, can and should uphold the district court's reasoning that that was the basis for it. But, uh, you know, the government also continues to take the position, and we think it would be appropriate here as well, uh, to find that, uh, that the application of the enhancement was appropriate given the, given the special degree of, uh, control generally that, uh, that DeMuros had. Did you argue that in your brief before us? Uh, I, I think we did, Your Honor, in that we argued that, uh, that we argued that the May decision, uh, out of the Sixth Circuit that, uh, that the appellant relied upon, uh, was in addition to being distinguishable because of the existence of the special term. Now, if we were to find that the abuse of trust enhancement does not apply, must we remand for resentencing? No. In fact, and we argued in our brief that, uh, even if you find that it doesn't apply, that you should not remand for sentencing in this case. Why? I mean, first of all, I, I, we understand your position. You didn't do this. You're just arguing it. Sometimes you're stuck with your client, and if the client is the government, well, that can be difficult too. So, we, we understand that, but if we're, but we still have to decide the case. Now, that's the main issue, isn't it? Whether this is harmless error. Well, and, yeah, I, I, I think it is harmless error. Uh, so. Why? Because we know that the judge was furious at these people? Well, it's not just that he was furious at them. I think there's more in the record here that, that makes this different than a case where it just, you could read the sentencing transcript and get an impression that the judge didn't, you know, view the defendants favorably. Right. But he gave a, he varied by two levels, right? He did a, a Booker variance? Uh, yeah, so. He went up and then he went down. Yeah, he varied downward, right. So, the, the reason stated on the record that, that he did that was that the, the tax loss, which was proved. It was a close call, whether it was over a million dollars. It was a close call. So, he found that it was over one million dollars, and so, therefore, that there should be two points up on the base offense level. Uh, but then, then varied downward saying, ah, well, it's, it's so close, let's go back down. So, I, I think that's a, that's a first reason. I, I think it's appropriate here, uh, to, to find that, uh, to find harmless error in sentencing. Uh, the effect of this is if we assume for sake of argument that it was wrong to apply, uh, the abuse of trust enhancement, uh, then nonetheless, the district court effectively sentenced within the correct guideline range because it, on the assumption that that was wrong, shouldn't have gone up two points, but then also shouldn't have gone down two points. So, the loss was, in fact, over a million, and that's, in fact, what the district court found. Does it, uh, do our precedents require where there's been a, an error in calculating the guideline range that we must remand? Uh, I don't know that they were, I don't know that, I, I, I did not find any case that said that that was mandatory. Uh, you know, I, I, I'm not going to run from the fact that, you know, that there's case law out there that said that that's, you know, sort of the preferable course in, in the run of cases. But I think this case is different. Uh, so, first, for that reason that, you know, the, the district court used the, you know, sentenced within the right guideline range. So, there was, uh, and second, I, I think, you know, to, to return to Judge Slavater's point, uh, the, it wasn't just that the district court found that these guys were, you know, the DeMuros, uh, the defendants, forgive my colloquialism, uh, were bad people. Uh, he specifically, you know, and these are some portions of the record that you cited from before, uh, you know, he specifically found that, you know, this was, uh, this was a persistent, uh, sort of, uh, pattern of, you know, abuse of conduct, disregard for the law. Uh, an experienced district court judge said it was one of the worst he'd ever seen. Uh, and in, also in the transcript, he makes specific, you know, it, it makes specific reference to, uh, the DeMuros, uh, misappropriation of funds from the, from the special trust funded account that they had to establish. So, I mean, they took money that belonged to their employees. Uh, yes, and, and he, yeah, uh, and kept it for themselves. Uh, so, and the IRS had basically said, you know, we trust you guys. You set up this special account. We're gonna, we're gonna trust you to set up this special account. Well, my argument here, Your Honor, is assuming that the enhancement, uh, was incorrectly applied. It's still appropriate to consider that conduct in arriving at the ultimate sentence. Uh, you know, even if that doesn't meet the technical requirements of the, of the abuse of trust enhancement, it still exhibits a, a disregard for the law. And it was still within the district court's discretion to select a sentence that, that promoted respect for law. That's one of the factors. A matter of sentencing policy, though, should we say, well, it came out all right in the end, and so we'll just affirm? Well, I, you know, I, I can appreciate those, those concerns, uh, you know, and I think that's the reason that the court's, uh, precedents say that, you know, the preferential course, uh, if there's a error in calculation of the guidelines, it's remand. But I, I, I think, I, I don't think it should be this court's policy to do that in every instance. Counsel, help me out specifically within the context of the facts in this case. As I read the record, um, the district court, uh, actually considered a downward variance because the amount of the loss just barely triggered, uh, an offense level increase of two. That's correct, Your Honor. Now, the court didn't ultimately vary downwards, but it was that factor which justified the sentence at the low end of the applicable range. Now, the court did, if we accept the government's position that the, that the, uh, demuro sentences are still reasonable, even if the abuse of trust enhancement was applied in error, then aren't we essentially holding that the enhancement had no meaningful effect with respect to that sentence? Uh, a couple points, Your Honor. First, I mean, the, the district court did vary downward. That's... It did. Okay. It did. That's, uh, so... That's, it went down two. It went down two, right. Well, I, I mean a downward variance. Well, that's how, that's, that's how the court, uh, that's... It varied down two, but sentenced at the top of the guideline range. Right, after it had varied down two. Right. Okay, uh, just, just so everyone's clear on what happened. Uh, but to return to your point, your, uh... My point is, my point is, if, if, uh, we do not remain, uh, aren't we reaching the conclusion that the enhancement really had no important effect with respect to the sentence that was imposed? Well, and I, and I think that's... We don't know that, do we? Well, I, I think we can know that from the transcript here. And that's, that's the point I was making earlier, that, uh, you know, the district court did also consider the conduct of the de muros with respect to the special fund account in selecting the upper range of the, of the guideline range it had decided to sentence in once it, once it varied downward. So, and again, even if this conduct, you know, doesn't meet the, doesn't meet the requirements for application of the enhancement, it's still appropriate to consider in, in arriving at the ultimate sentence. So, I, I think given... I wonder about that. I wonder just as a matter of policy whether we should do that. Uh, couldn't it now be a, a longer sentence? I mean, there's, there's no indication that if, if we, um, take care of the error here, suppose we agree that this is not an appropriate case for a, a two-level opt, um, and it goes back to the district court. Would the district court be precluded from lengthening, making, making a higher sentence? I don't know that it would be precluded from doing that, Your Honor. I don't think so. I mean, this is not a case where you say the appeal cause gave, gave a reason and you don't want to allow that to happen. You know, we, I, I didn't articulate that very well. I apologize. But it's not, uh, it couldn't possibly be a case of like vindictiveness because they appealed, um, you have to at least go higher. I mean, couldn't he get, could the district court go higher? Uh, I, I, I think it would be possible, Your Honor. Um, um... Would the government argue for a higher sentence? Uh, that I think is something that we would be determined in the future if you do, in fact, vacate the sentence and remand for sentencing. Uh, it, it, my time is up, so... Oh, that's all right. You're not saved by the red light. Um... Of course, it's the defendants who appealed that point. Yes. Um... Your Honor, if, I, I think I've made, Your Honors, I've made all the points that I have to make. Uh, if there's no further questions, then... Is there anything you want to add, anything you want to add? Okay. All right. Thank you. Thank you, Your Honors. We'd also like to have some confidence that, in fact, the people who, in the government, who are supposed to be watching these things really are. Uh... Silence. Would you like me to address that, Your Honor? Would you like to? Uh, if I'm given an option, no. All right. We'll hear your two-minute rebuttal. Thank you. Just briefly, just to... the danger for your clients that it might, if, if we, if we take care of this error, if we assume it's an error, that the trial court who already expressed his, um, disdain for these defendants may very well try to, um, raise the, um, sentence. I, I think my clients would be, Judge. Would be willing? Willing to take the chance, yes. Um, because, well, the judge's, judge-bound decision to vary downward two levels is not being challenged here. I think that's important to remember. Um, and I think what Your Honor indicated... That's because it came out okay. Um... I mean, if I were a lawyer, I'd think about that very carefully. I think the reason for the departure is you have to remember that the total failure to, the amount of the failure to pay over, the substantive amount, was only about $560,000. Only. So only... That's pretty easy for a lawyer to say. It's not easy to say to judges... In comparison to... Who haven't had a race for many years. And I'm, I'm referring to the $1 million threshold. So it was about half of that. So I think, you know, a lot of things were essentially piled on to get past that $1 million threshold. And it just barely did. Yeah, but it did. The fact remains that it did. What would be the guideline range, assuming a two-level variance, and you win on the abusive position? 20. It's 31 to 41 months. He says no. He says no. So... I disagree. But there was that point... All right, well, that would be up for the district court. Correct. That's what we... And, you know, the case law is that the government has the burden of showing that the district would have imposed a lesser sentence. And I don't think that we can get in Judge Brown's head and know what exactly what he was thinking at the time. He made it clear, though, what he thought. And I don't know... There was a lot of... I mean, that's surprising. I know Judge Brown. And I wouldn't have expected that kind of language to come from Judge Brown. The case kind of had a very long and tortured procedural history. And I think at some point, you know, that Judge Brown was glad the case was over. Thank you. Wait. Do you have any... I have no other questions. No other questions. Okay. Thank you. We'll take a matter under advisement.